IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jody Lynn Ward, | ) | C/A No. 0:11-3277-RBH-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden of Lieber Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Jody Lynn Ward ("Ward"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 23.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Ward was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 24.) Ward filed a response in opposition to the respondent's motion. (ECF No. 39; see also Supplement, ECF Nos. 47, 50, 55 & 58.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted.

## BACKGROUND

Ward was indicted in July 2003 in Georgetown County for two counts of murder (03-GS-22-1030 & 03-GS-22-1031). (App. at 1067-70, ECF No. 22-9 at 70-73.) Ward was represented by Margaret Ann Kneece, Esquire, and J. Wesley Locklair, III, Esquire, and from March 15-18, 2004 was tried before a jury and found guilty as charged. (App. at 849, ECF No. 22-7 at 97.) The circuit

court sentenced Ward to life imprisonment for each murder charge, both sentences to be served concurrently.  (App. at 857, ECF No. 22-7 at 105.)

Ward timely appealed and was represented by Robert M. Dudek, Esquire, Assistant Appellate Defender, who filed an Anders[1] brief on Ward's behalf that raised the following issue:

> Whether the court erred by refusing to suppress appellant's statement where law enforcement knew appellant was attempting [to] contact his attorney prior to his meeting with Assistant Sheriff Weaver, and where Weaver was aware appellant had invoked his right to counsel upon his arrest, since appellant should not have been deemed to have waived his right to counsel under these circumstances?

(App. at 934, ECF No. 22-8 at 55.)  Ward filed a *pro se* response to the Anders brief, which he supplemented, in which he presented numerous issues.  (ECF No. 22-11; ECF No. 26-1 at 4.)  On January 26, 2007, the South Carolina Court of Appeals issued an order dismissing Ward's appeal.

(State v. Ward, Op. No. 07-UP-48 (S.C. Ct. App. 2007); ECF No. 26-3.)  Ward filed a *pro se* petition for rehearing dated February 1, 2007.  (ECF No. 26-4.)  Pursuant to a letter from the Clerk of Court, the State filed a return to Ward's *pro se* petition for rehearing.  (ECF No. 26-5.)  The South Carolina Court of Appeals denied Ward's petition for rehearing on March 22, 2007.  (ECF No. 26-6.)

Ward filed a *pro se* petition for a writ of certiorari dated April 14, 2007.  (ECF No. 26-7.) In a letter dated June 29, 2007, however, Ward voluntarily withdrew his petition.  (ECF No. 26-9.) The South Carolina Supreme Court granted Ward's request on July 5, 2007 and dismissed his appeal. (ECF No. 26-10.)  The remittitur was issued July 6, 2007.  (ECF No. 26-11.)

---

[1] Anders v. California, 386 U.S. 738 (1967).  Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  Anders, 386 U.S. at 744.



Ward filed a *pro se* application for post-conviction relief on July 11, 2007 ("2007 PCR action") in which he raised an allegation of ineffective assistance of counsel.  (Ward v. State of South Carolina, C/A No. 07-CP-22-915; App. at 944-50, ECF No. 22-8 at 65-71.)  The State filed a return.  (App. at 956-58, ECF No. 22-8 at 77-79.)  Through counsel Bobby G. Frederick, Esquire, Ward filed a supplement to his PCR application on April 14, 2008 in which he raised the following claims:

1)    Counsel for petitioner was ineffective by failing to object when the prosecutor argued lack of remorse to the jury during closing argument.

2)    Counsel for petitioner was ineffective by failing to object when the prosecutors repeatedly vouched for the credibility of witnesses and placed their personal opinions before the jury.

3)    Counsel for petitioner was ineffective by failing to object when the prosecutors repeatedly stated their personal opinions regarding the credibility of the petitioner and the defense theory of the case.

4)    Counsel for petitioner was ineffective for failing to request jury instructions on manslaughter and involuntary manslaughter.

(ECF No. 26-12.)

On May 1, 2008, the PCR court held an evidentiary hearing at which Ward appeared and testified and continued to be represented by Bobby G. Frederick, Esquire.  (App. at 960-1037, ECF No. 228 at 81 through ECF No. 22-9 at 41.)  By order dated May 15, 2008, the PCR judge denied and dismissed with prejudice Ward's PCR application.  (App. at 1038-53, ECF No. 22-9 at 41-56.)  Through counsel, Ward filed a Rule 59(e) motion to alter or amend the PCR court's order of dismissal.  (App. at 1054-59, ECF No. 22-9 at 57-65.)  It appears that on August 6, 2008, the PCR court filed an order denying Ward's motion in part and clarifying its order of dismissal.  (See ECF No. 26-14 at 4) (citing App. at 1060-66, ECF No. 22-9 at 63-69).

In his PCR appeal, Ward was represented by Robert M. Pachak, Esquire, Appellate Defender for the South Carolina Commission on Indigent Defense, who filed a petition for a writ of certiorari on Ward's behalf on December 30, 2008 that presented the following issues:

1.    Whether defense counsels were ineffective in failing to object to numerous errors in the solicitor's closing arguments such as to render petitioner's trial being unfair?

2.    Whether defense counsels were ineffective in failing to request or put on the record requests to charge on the lesser included offenses of voluntary and involuntary manslaughter?

(ECF No. 26-13 at 3.)  The State filed a return.  (ECF No. 26-14.)  The South Carolina Supreme Court denied Ward's petition for a writ of certiorari by letter order dated August 20, 2009.  (ECF No. 26-15.)  The remittitur was issued on September 8, 2009.  (ECF No. 26-16.)

Ward filed a second application for post-conviction relief on July 13, 2009 ("2009 PCR application") in which he raised the following issues:

1.    Was Applicant's Due Process Rights; and the right to Effective Assistance of Trial Counsel's violated and Applicant Prejudiced, when Trial Counsel's failed to Convey Plea Offers to Applicant?

2.    Was Counsel's Ineffective for failing to Convey Plea Offer?

(Ward v. State of South Carolina, C/A No. 09-CP-22-1074; ECF No. 26-17 at 8) (errors in original). The State filed a return.  (ECF No. 26-18.)  The PCR court issued a conditional order of dismissal dated October 1, 2009, giving Ward twenty days to show cause as to why the conditional order should not become final.  (See ECF No. 26-20 at 1.)  Ward filed a *pro se* response to the conditional order of dismissal on November 9, 2009.  (ECF No. 26-19.)  A final order of dismissal was issued on January 13, 2010 which found Ward's 2009 PCR application to be successive and barred by the statute of limitations.  (ECF No. 26-20.)

Ward appealed the dismissal of his 2009 PCR application. By letter dated February 23, 2010, Ward was informed by the Clerk of Court of the South Carolina Supreme Court that, because the PCR court had determined that Ward's 2009 PCR action was successive and untimely under the statute of limitations, Ward was required pursuant to Rule 243(c)[2] of the South Carolina Appellate Court Rules to provide a written explanation as to why the PCR court's determination was improper. (ECF No. 26-21.) Ward filed a response (entitled a "petition for a writ of certiorari") on March 2, 2010 that presented the following issues:

> 1)    Did the Lower Court [err] by determining in its Final Order of Dismissal that the Petitioner's post-conviction relief action was barred by the statute of limitations and impermissibly successive when the Respondents waived/abandoned/relinquished any such known legal right as a matter of law?

> 2)    Did the Lower Court [err] by determining in its Final Order of Dismissal that the Petitioner['] s post-conviction relief action was barred by the statute of limitations and impermissibly successive, where court['] s findings and facts and conclusion of law in the Conditional Order of Dismissal wasn't barring Petitioner as to statu[t]e of limitation[s] and being impermissibly successive?

(ECF No. 26-22 at 3.) The South Carolina Supreme Court issued an order dismissing Ward's appeal on March 15, 2010. (ECF No. 26-23.) The remittitur was issued March 31, 2010. (ECF No. 26-24.)

Ward filed a third application for post-conviction relief on May 4, 2010  ("2010 PCR application") in which he raised the following issue:

> Seeking relief based on new rule of law[.]  See State v. Belcher Op. No. 26729. . . .
> The jury instructions in my case are unconstitutional under Belcher's opinion.

(Ward v. State of South Carolina, C/A No. 10-CP-22-733; ECF No. 26-25 at 3.)  The State filed a return. (ECF No. 26-26.) Ward filed a *pro se* objection to the State's return. (ECF No. 26-27.) The PCR court issued a conditional order of dismissal filed June 15, 2010, giving Ward twenty days to

---

[2] This Rule was formerly numbered as South Carolina Appellate Court Rule 227(c).



show cause as to why the conditional order should not become final.  (See ECF No. 26-28.)  Ward

filed a *pro se* response to the conditional order of dismissal on July 6, 2010.  (ECF No. 26-29.)  A

final order of dismissal was issued on July 29, 2010.  (ECF No. 26-30.)

Ward appealed the dismissal of his 2010 PCR application and filed a petition for a writ of

certiorari dated July 20, 2010 that raised the following issue:

> Did the circuit court err in holding that Petitioner was not entitled to the benefit of
> Francis v. Franklin, []; and Sandstrom v. Montana, [] on collateral review to
> invalidate his conviction due to improper Burden-shifting instruction at his Trial on
> Malice charge?

(ECF No. 26-31 at 3.)  The State filed a return.  (ECF No. 26-32.)  The South Carolina Supreme

Court denied Ward's petition for a writ of certiorari by letter order dated August 18, 2011.  (ECF No.

26-33.)  The remittitur was issued on September 7, 2011.  (ECF No. 26-34.)

Ward then filed a state petition for a writ of habeas corpus with the South Carolina Supreme

Court on October 31, 2011 in which he raised the following issues:

> Issue I:  Was trial counsel ineffective for failing to object to the Solicitor's improper
> closing summation which impermissibly lessened the jury's sense of impartiality that
> denied Petitioner his right to a fair and impartial jury and his right to a fair trial?

> Issue II:  Was trial counsel ineffective for improperly telling the jury if any mistakes
> are made a "higher court" will take care of the error and thus counsel's improper
> statements tipped the scales in favor of the State, and the statements ultimately
> denied Petitioner his right to a fair trial?

> Issue III:  Was trial counsel ineffective for failing to object to the trial court's burden
> shifting jury instructions, in violation of the Due Process Clause?

(ECF No. 26-35 at 8-26.)  The South Carolina Supreme Court denied Ward's petition by order issued

November 16, 2011.  (ECF No. 26-36.)

## FEDERAL HABEAS ISSUES

In Ward's federal petition for a writ of habeas corpus, he raises the following issues:

**Ground One:**  The Trial Court and subsequent reviewing court's erred in ruling Petitioner waived his right to counsel when Weaver interrogated Petitioner, after Law Enforcement knew Petitioner was attempting to contact his attorney prior to Petitioner meeting with the Assistant Sheriff Weaver.  Law enforcement also was aware that Petitioner had invoked his right to counsel upon his arrest and therefore under the facts of the case the statement should have been suppressed.

**Ground Two:**  The State Courts erred in failing to find defense counsels ineffective in failing to object to numerous errors in the solicitor's closing argument that such argument rendered Petitioner's trial as being unfair and a denial of due process?

**Ground Three:**  The PCR Court and subsequent reviewing court's erred in failing to find counsels rendered ineffective assistance of counsel, when counsel(s) failed to convey plea offers to Petitioner prior to trial?

**Ground Four:**  The State PCR Court and subsequent reviewing courts erred in failing to find Petitioner's jury instructions were unconstitutional under State v. Belcher?

**Ground Five:**  The State Supreme Court erred in failing to find counsel ineffective for failing to object to the solicitor's improper closing that denied Petitioner his right to a fair trial.

**Ground Six:**  The State Supreme Court erred in failing to find counsel rendered ineffective assistance when counsel improperly told the jury if any mistakes are made a "higher court" will take care of the error and thus counsel's improper argument tipped the scales in favor of the State and lessened the State burden of proof.

**Ground Seven:**  The State Supreme Court erred in failing to find counsel ineffective for failing to object to the unconstitutional burden shifting jury instructions given during trial.  This decision was unreasonable and contrary to clearly established federal law.

(Pet., ECF No. 1) (errors in original).  Ward has withdrawn Grounds Three and Six.  (See ECF No. 39 at 1, 2, 3.)  Therefore, the court will address Grounds One, Two, Four, Five, and Seven.

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the



court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 410 (2000); see also Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review.  Id. at 785.  Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning.



See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which



have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.     Respondent's Motion for Summary Judgment**

**1.     Ground One**

Ward first alleges that the trial court erred in finding that Ward had waived his right to counsel during an interrogation by Assistant Sheriff Weaver where law enforcement allegedly knew that Ward was attempting to contact his attorney before the meeting with Weaver and knew Ward had invoked his right to counsel at the time of his arrest. Therefore, Ward argues that the trial court erred in denying his motion to suppress the statement given during that interrogation. For the reasons that follow, the court finds that the trial court's denial of Ward's motion to suppress did not unreasonably misapply clearly established federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

**Controlling Law Regarding Suppression of Statements.** The United States Supreme Court has held that under Edwards v. Arizona, 451 U.S. 477 (1981), "if a suspect requests counsel at any time during [an] interview [by law enforcement officers], he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." Davis v. United States, 512 U.S. 452, 458 (1994). "The Edwards rule is designed to prevent police



from badgering a defendant into waiving his previously asserted <u>Miranda</u> rights."  <u>Montejo v.</u>

<u>Louisiana</u>, 556 U.S. 778, 787 (2009) (internal quotation marks & citation omitted).  In <u>Minnick v.</u>

<u>Mississippi</u>, 498 U.S. 146 (1990), the United States Supreme Court held that <u>Edwards</u> prevents

officers from reinitiating an interrogation after a suspect invokes his right to counsel unless counsel

is present.  The <u>Minnick</u> Court explained that

> [i]n <u>Miranda v. Arizona</u>, . . . we indicated that once an individual in custody invokes
> his right to counsel, interrogation must cease until an attorney is present; at that point,
> the individual must have an opportunity to confer with the attorney and to have him
> present during any subsequent questioning.   <u>Edwards</u> gave force to these
> admonitions, finding it inconsistent with <u>Miranda</u> and its progeny for the authorities,
> at their insistence, to reinterrogate an accused in custody if he has clearly asserted his
> right to counsel.  We held that when an accused has invoked his right to have counsel
> present during custodial interrogation, a valid waiver of that right cannot be
> established by showing only that he responded to further police-initiated custodial
> interrogation even if he has been advised of his rights.  Further, an accused who
> requests an attorney, having expressed his desire to deal with the police only through
> counsel, is not subject to further interrogation by the authorities until counsel has
> been made available to him, unless the accused himself initiates further
> communication, exchanges or conversations with the police.

<u>Id.</u> at 150 (internal quotation marks & citations omitted).

**<u>Jackson v. Denno</u> Hearing.**  Prior to Ward's trial, the trial court held a hearing pursuant to

<u>Jackson v. Denno</u>, 378 U.S. 368 (1964),[3] on Ward's motion to suppress a statement that Ward

provided on January 8, 2003.  (<u>See</u> App. at 294-333, ECF No. 22-3 at 28-67.)   Following

sequestration of the witnesses, the trial court first heard testimony from Kenneth Owens, the Chief

of Operations at the Georgetown County Detention Center, who indicated that he had spoken to

Ward approximately twenty to thirty times since Ward's arrest, and each of those conversations was

---

[3] The <u>Jackson</u> Court enunciated that a criminal defendant has a "constitutional right at some
stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable
determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of
the confession."  <u>Jackson</u>, 378 U.S. at 376-77.



initiated by Ward.  With regard to the statement at issue, Owens stated that Ward came to his office and requested to speak with "Sheriff Carter Weaver."  Owens testified that he contacted Chief Michael Schwartz, the administrator of the jail, and informed him that Ward would like to speak with Weaver.  Owens denied threatening or coercing Ward into giving a statement and denied promising Ward anything in return for a statement.  (App. at 295-298, ECF No. 22-3 at 29-32.)

During cross-examination, Owens indicated that he could not recall certain aspects of the meeting, such as what time he met with Ward and whether Ward requested to make any phone calls. Owens testified that any time Ward requested to speak with his lawyer, Owens would let him. Owens further stated that Ward was in his office for approximately five minutes and then Ward was returned to his cell.  Owens testified that he did not receive another request from Ward to speak with Weaver and that he believed Wards' conversation with Weaver occurred in Schwartz's office.  (App. at 299-300, ECF No. 22-3 at 33-34.)  Ward's counsel introduced an exhibit consisting of telephone records from January 8, 2003, which reflected a telephone call from Owens's extension to Ward's counsel at 2:44 p.m.  Owens stated that the telephone record did not refresh his memory; however, Owens stated that if Ward requested to telephone his counsel, he let Ward.  Owens indicated that Ward was not shackled while providing his statement because at some point Ward requested to use the restroom and Owens stood by the door.  Owens further stated that he had to cut the shackles off Ward at one point and it was possible that that occurred on January 8, 2003.  (App. at 301-04, ECF No. 22-3 at 35-38.)

Ward's counsel introduced an exhibit consisting of the business telephone logs of defense counsel's law firm.  This log reflects a 2:45 p.m. telephone call on January 8, 2003 from Ward to defense counsel and the message for counsel states, "If you are not talk to Solicitor/he would talk to Sheriff and Solicitor, just let him know."  (App. at 304, ECF No. 22-3 at 38.)  Finally, Owens



denied that Ward ever requested the presence of his counsel during Ward's meeting with Weaver or during any of Ward's conversations with Owens and denied recalling Ward state after telephoning counsel that he did not wish to speak with Weaver.  (App. at 304-05, ECF No. 22-3 at 38-39.)

Chief Michael Schwartz, the Jail Administrator for the Georgetown County Detention Center, affirmed that he received a call from Owens on January 8, 2003 regarding Ward, and as a result, Schwartz stated that he called Weaver.  Schwartz testified that he informed Weaver that Ward would like to speak with him.  Schwartz denied having any contact with Ward regarding his attempt to contact Weaver, denied threatening or coercing Ward or making Ward any promises, and denied withholding paperwork that would allow Ward to correspond with his brother—an inmate with the South Carolina Department of Corrections ("SCDC")—or even discussing such paperwork with Ward.  Schwartz testified that to the best of his knowledge he signed the SCDC paperwork.  Finally, when asked whether he saw Ward at all on January 8, 2003, Schwartz responded that he did not recall.  (App. at 305-09, ECF No. 22-3 at 39-43.)

Carter Weaver, the Assistant Sheriff of the Georgetown County Sheriff's Department, testified that he took a statement from Ward beginning at approximately 3:50 p.m. on January 8, 2003 in the victims' advocate office at the detention center.  Weaver indicated that Schwartz was waiting with Ward until he arrived and then Schwartz left.  Weaver stated that he came to the detention center after receiving a telephone call from Schwartz informing him that Ward wanted to speak with him and offer a statement.  Before going to the detention center, Weaver stated that he called the solicitor's office and gathered some equipment, such as a tape recorder, a note pad, and a pen.  Weaver testified that he had briefly spoken to Ward incident to Ward's arrest and Ward had asked for an attorney, which ceased the interview.  Weaver stated that Ward was not in handcuffs during the interview and that he recorded the conversation.  A transcription of the conversation was

entered into evidence.  (App. at 870-928, ECF No. 22-7 at 117 through ECF No. 22-8 at 49.) Weaver denied using any physical force, threatening, or coercing Ward, and denied promising Ward anything for providing the statement.  Weaver denied knowledge of anyone else performing such acts.  Weaver stated that he read Ward his Miranda rights prior to obtaining the statement, and indicated that Ward did not appear to be under the influence of anything and that Ward appeared to understand the warning.  Ward and Weaver signed the form containing the Miranda rights that Weaver read to Ward, which was entered into evidence. (App. at 309-315, ECF No. 22-3 at 43-49.) The form was signed and dated January 8, 2003 at 3:36 p.m. and included a notation by Ward that stated, "I called Mr. Weaver to jail."  (App. at 315, ECF No. 22-3 at 49.)

Weaver denied that Ward ever asked for counsel and stated that if Ward had, Weaver would have stopped the interview.  In explaining the time gap from when the form was signed until the tape recording began, Weaver testified that after the signing the Miranda form, Ward went to the restroom.  Weaver also indicated that the Miranda rights were read later on the tape recording. Weaver testified that he left after Ward provided his statement.  Weaver stated that he did not recall seeing shackles on Ward, affirmed that he asked Ward to write on the Miranda form that he called Weaver to the jail, and denied knowledge of Ward's placement within the detention center or any complaints by Ward concerning problems at the detention center.  Weaver stated that he read the Miranda rights as written and did not ask specifically whether Ward wanted his counsel present. Weaver denied being informed by Owens that Ward had tried to contact counsel.  Weaver testified that the statement took approximately an hour or an hour and a half.  (App. at 316-19, ECF No. 22-3 at 50-53.)

Weaver further indicated that he last spoke with Ward on the date of Ward's arrest.  Weaver stated that although he received prior telephone calls that Ward wanted to speak with him, January



8, 2003 was the first time that Weaver was informed that Ward wanted to speak with him regarding his charges. Weaver did not followup on Ward's other requests. (App. at 319-21, ECF No. 22-3 at 53-55.) Finally, Weaver stated that Ward was in the general administration area of an office when he arrived. (App. at 323-24, ECF No. 22-3 at 57-58.)

No further testimony was offered. Defense counsel argued that Ward's statement was involuntary and that "[e]ven if Mr. Ward had initiated any conversation with Captain Owens, once he was taken back to his cell and put back into custody the initiation of that conversation then ended. When he was brought back out of his cell that was initiated by law enforcement." (App. at 324-25, ECF No. 22-3 at 58-59.) Further, defense counsel referenced the conditions of Ward's incarceration based on Owens's testimony that at one point he cut the shackles off of Ward. Defense counsel argued that there was a fourteen-minute gap between the time the <u>Miranda</u> form was signed and the beginning of the recorded statement and that although Weaver read Ward the basics of the <u>Miranda</u> form, he did not ask, "Do you want your lawyer here?" (App. at 325, ECF No. 22-3 at 59.) Defense counsel pointed out that the police were aware Ward had an attorney and appeared to argue that any initiation of contact by Ward occurred "downstairs" and when he went "upstairs" he must have asked to call his lawyer. (<u>Id.</u>) Defense counsel argued that Ward's initiation, to the extent that it occurred, ceased upon asking to call his lawyer unless Ward reinitiated contact and, therefore, the police initiated the contact by taking him back after he called his lawyer. Finally, defense counsel contended that Weaver exerted some influence over Ward by having Ward write on the <u>Miranda</u> form, "I called Carter Weaver up here." (App. at 326, ECF No. 22-3 at 60.)

At the <u>Jackson v. Denno</u> hearing, the State responded to defense counsel's motion by arguing that Ward requested to speak to Weaver by name and Weaver arrived within an hour of Ward's request. The State asserted that defense counsel's argument that Weaver initiated contact by



responding in a timely manner when he was not on site at the time of the request is "an absurd semantical argument." (App. at 327, ECF No. 22-3 at 61.) The State pointed out that the <u>Miranda</u> form specifically informed Ward of his right to talk to a lawyer and have him present with Ward while he was being questioned. The State argued that Weaver having Ward include the statement on the form was a precautionary measure, suggesting that Ward had reinitiated contact with law enforcement. The State argued that the message from Ward included in defense counsel's business telephone log demonstrated that if defense counsel was not going to talk to the solicitor, Ward would talk to the sheriff and the solicitor and to let Ward know. Relying on the transcript of Ward's statement, the State pointed out that Ward was advised of his <u>Miranda</u> rights; that Ward acknowledged the series of events that occurred between the time the <u>Miranda</u> form was written and the time the statement was recorded; that Ward denied being threatened; and that the transcript generally revealed no indication of threats, coercion, intimidation, promises, or complaints regarding his shackles. The State asserted that defense counsel mischaracterized Owens's testimony concerning the shackles, specifically that cutting shackles off may be done when the shackles lock up. Finally, the State argued that pursuant to <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981), Ward reinitiated contact voluntarily and of his own free will and provided a statement that should be admissible. (App. at 327-30, ECF No. 22-3 at 61-64.)

Defense counsel replied that regardless of the contents of the message from Ward to his counsel, once Ward asked to speak with his counsel, all interrogation of him should have ceased until Ward reinitiated the conversation again, which did not occur. (App. at 330, ECF No. 22-3 at 64.)

The trial court deemed Ward's statement admissible. Specifically, the trial court found by a preponderance of the evidence that Ward initiated the interview. The trial court found that the



message to defense counsel indicated not that Ward was requesting the presence of his counsel, but that Ward was informing him that he was going to speak with the sheriff. (App. at 331-32, ECF No. 22-3 at 65-66.) The trial court observed that Ward signed a document stating that he wanted Weaver at the jail; that Ward was fully advised of his rights under the Fifth and Sixth Amendments before providing the statement, including his Miranda rights; that Ward waived his rights under the Fifth and Sixth Amendments and the constitutional safeguards that were required under Miranda; that Ward's statement was freely and voluntarily given "without duress, without coercion, without undue influence, without reward, without promise or hope of reward, without promise of leniency, without threat of injury or without impulsion or inducement of any kind and that this alleged incriminating statement or confession was the voluntary product of a free and unconstrained will of [Ward]." (App. at 332-33, ECF No. 22-3 at 66-67.)

      **Ward's Habeas Claim Based on the Trial Court's Failure to Suppress.** In support of his Petition on this Ground, Ward relies on alleged inconsistencies in the testimony of Schwartz and Weaver. For example, he points out that Schwartz denied having contact with Ward "with respect to him attempting to contact [] Weaver," that Schwartz did not recall whether he saw Ward at all on January 8, 2003, and that Schwartz denied seeing Ward come over to talk to Weaver (App. at 307, 309, ECF No. 22-3 at 41, 43). Ward further notes that, by contrast, Weaver indicated that Schwartz was waiting with Ward until Weaver arrived and then Schwartz left (App. at 311, ECF No. 22-3 at 45). The court finds, considering the totality of the evidence presented at the Jackson v. Denno hearing, that this alleged inconsistency is immaterial and insufficient to rebut by clear and convincing evidence the presumption that the factual determinations of the state court are correct. See 28 U.S.C. § 2254(e)(1). To the extent that Ward seeks an evidentiary hearing to submit new evidence to support this claim—such as his own testimony, his brother's testimony, and Ward's

mental health records—the court observes that its review for habeas corpus purposes is generally limited to the evidence that was placed before the state court. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398, 1400 n.7 (2011); see also 28 U.S.C. § 2254(d)(2). Ward has not established that any exception to this general rule applies here. See Cullen, 131 S. Ct. at 1400-01; see also 28 U.S.C. § 2254(e)(2); (Order, ECF No. 69). Applying the law as clearly established by the United States Supreme Court regarding the suppression of statements to the surrounding facts presented to the trial court, this court finds no unreasonable application of law nor any unreasonable factual findings. Accordingly, Ward is not entitled to federal habeas relief on this claim.

### 2.    Ground Two

Ward next argues that defense counsel was ineffective in failing to object to numerous errors in the solicitor's opening and closing arguments.

**Controlling Law Regarding Allegations of Ineffective Assistance of Counsel.** A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S.

at 694. Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." United States v. Cronic, 466 U.S. 648, 659 (1984).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 131 S. Ct. 770, 788 (2010). The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court). Having reviewed

the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

**PCR Proceedings Regarding Ineffective Assistance of Counsel.** Ward argued before the PCR court that defense counsel was ineffective in failing to object to the following in the Assistant Solicitor's opening and closing arguments: (1) comments on Ward's lack of remorse; (2) vouching for the prosecution's witnesses; and (3) comments on the lack of credibility of Ward's statement and the defense's theory of the case. (App. at 951-54, ECF No. 22-8 at 72-75.) In Ward's supplement to his PCR application, he referenced the specific comments at issue with corresponding transcript cites. (App. at 951-54, ECF No. 22-8 at 72-75.) Ward argued that defense counsel should have objected to the State's improper references to his alleged lack of remorse in closing argument, when the Assistant Solicitor stated that Ward's demeanor on the recorded statement "is almost unbelievable. It is simply cold and calculated. . . . Protecting Jody Ward is his only interest, not, not the least bit of remorse, not the least bit of concern about the fate of the two people that he had killed." (App at 787-88, ECF No. 22-7 at 35-36.) Ward also alleged that trial counsel should have objected to the State's description of Ward's nature as "cold and calculated" and its argument that after the individuals were killed, Ward drove around looking for something to eat. (App. at 788, ECF No. 22-7 at 36.) Ward next argued that defense counsel was ineffective in failing to object to the following statements by the assistant solicitor concerning the witnesses for the prosecution: that they "are going to put their hand on the bible" and "[t]hey're going to swear to tell the truth" (App. at 385, ECF No. 22-3 at 119); his description of the factors that he believed corroborated the testimony of witness Denise Langston and statements that "[s]he admitted some stuff that wouldn't make you proud if you were her parent, but I'll submit to you that she was credible," she "told the

truth and she told the whole truth," and "you know she told the truth because her testimony was corroborated" (App. at 768-71, 771, 772, 772-74, ECF No. 22-7 at 16-19, 19, 20, 20-22); "I think that [Tracy Collins] was a very credible witness . . ." (App. at 778, ECF No. 22-7 at 26); "I submit to you that Louis Brazen was a very credible witness, that he didn't try to hide anything, that he didn't do anything but tell the truth as he knew it, and he told all the truth" (App. at 783, ECF No. 22-7 at 31); and that Melissa Elliot "told the truth" (App. at 794, ECF No. 22-7 at 42). Finally, Ward argued that defense counsel was ineffective in failing to object to the following statements concerning the Assistant Solicitor's personal opinions regarding Ward's credibility and the defense's theory of the case: "[T]here's no evidence in this case that's going to indicate that [another individual] had anything to do with it other than the statement of the Defendant, and I don't believe that" (App. at 384, ECF No. 22-3 at 118); "that's a lie and he knew it was a lie," when referencing Ward's statement (App. at 776, ECF No. 22-7 at 24); "[t]hat's just simply not believable because it's not the truth," when referencing the defense's theory of the case (App. at 778, ECF No. 22-7 at 26); "His demeanor on that tape is almost unbelievable" (App. at 787, ECF No. 22-7 at 35); "He's also caught lying a couple of times on the tapes, a couple, you heard it. You can judge for yourselves whether he was credible" (App. at 788, ECF No. 22-7 at 36); "[s]hortly thereafter, he just goes to stammering and stuttering about [a] just completely unbelievable statement," when referencing Ward's recorded statement (App. at 789, ECF No. 22-7 at 37); "Another thing he's lying about is Carter Weaver says . . ." (id.); "[n]ow, how unbelievable is it that they have this knock down, drag out argument . . ." (App. at 790, ECF No. 22-7 at 38); "One more thing he gets caught in a lie as far as he goes out there to move the bodies" (App. at 791, ECF No. 22-7 at 39); "He just plain admits that he's lying. There's no question about it" (id.); the defense's theory of self-defense "seems absurd, it's ridiculous, . . ." and later that "[i]t's simply ridiculous" (App. at 795, 797, ECF No. 22-7

at 43, 45); "He lies . . .," stated four times (App. at 797, ECF No. 22-7 at 45); and "the man you heard on that tape giving you that ridiculous story," when referencing Ward's recorded statement (App. at 798, ECF No. 22-7 at 46).

Defense counsel, Locklair and Kneece, testified at the PCR hearing. Pertinent to these allegations, Locklair acknowledged not objecting to these statements in the Assistant Solicitor's opening and closing arguments. When asked if he saw any statements that were objectionable or harmful to Ward that he believes he should have objected to, Locklair responded,

> There were some obviously about the remorse and some that could be on borderline bolstering, but that's oftentimes a gray area. Unless it's really damaging to me is a lot of times I think it comes across to juries as being whiny when defense attorneys object to little things, so unless it's really something damning to the case, I normally don't object in opening or closing.

(App. at 990, ECF No. 22-8 at 111.) Locklair also indicated that by giving the last closing argument, he could respond to the State's comments and arguments. (App. at 992-92, ECF No. 22-8 at 113-14.) Locklair further acknowledged that he should have objected to the State's statement that Ward did not show "the least bit of remorse." (App. at 994, ECF No. 22-8 at 115.) However, Locklair stated that while many of the comments regarding witness credibility were objectionable, in his experience it is a "waste of time" because the judge gives a quick curative instruction, making him "look stupid" and because objections can offend the jury. (App. at 995, ECF No. 22-8 at 116.)

Kneece also acknowledged that the objections at issue were not made and stated that throughout the trial the attorneys for both sides looked like "Mexican jumping beans" due to the numerous objections. Kneece testified that by the time they reached closing arguments, it was clear that the jury did not want "anymore up and down;" however, Kneece pointed out that Locklair did make an objection during closing argument. (App. at 1015, ECF No. 22-9 at 18.) Specifically, Locklair objected to an allegation that Ward had been hiding evidence and obstructing the jury's duty



and asked for a curative instruction or a mistrial.  As a result, the court issued a curative instruction,

directing the jury to disregard the Assistant Solicitor's last statement and reminding them "that what

the attorneys say in these closing arguments is not evidence.  You will recall the evidence as you

heard it from [the] witness stand and as you see it in the exhibits."  (App. at 782, ECF No. 22-7 at

30.)  Kneece indicated that not objecting to the lack of remorse statement was appropriate.  She

described Ward's demeanor on the recorded statement as stoic and unemotional, and testified that

she believed it was a prepared statement.  (App. at 1016-17, ECF No. 22-9 at 19-20.)  Kneece further

testified that defense counsel did

> our best not to object during [the State's] closing argument.  The jury was just as
> tired of him as they were of us, and we felt—or of us as they were of them, that [the
> State] may have done some things that would irritate them in the way he was going
> through, and at that point he kind of postured himself to get ready, and that was a trial
> strategy.
>     Again, you look at it now and seeing it in print, it—we may, just to preserve
> the record, may should have objected, but I think that that would have affected Mr.
> Ward's trial.

(App. at 1019, ECF No. 22-9 at 22.)  Kneece acknowledged that on several occasions the court,

defense counsel, and the State informed the jury that what is said in closing arguments is not

evidence and that the jury should recall the evidence from the witness stand.  (App. at 1020, ECF

No. 22-9 at 23.)

In considering Ward's allegations of ineffective assistance of counsel, the PCR court[4] found

Locklair's testimony to be credible, Kneece's testimony to be highly credible, and Ward's testimony

---

[4] In discussing the findings and conclusions of the PCR court, the court has considered the
PCR court's Final Order of Dismissal (App. at 1038-53, ECF No. 22-9 at 41-56) and the
clarifications in the PCR court's Order Denying Applicant's Motion to Alter or Amend in Part and
Clarifying Order of Dismissal (App. at 1060-66, ECF No. 22-9 at 63-69), as the parties have
represented to the court that this second Order was issued by the PCR judge.



to be not particularly pertinent to the factual issues.[5]  The PCR court found that defense counsel was

deficient in failing to object to the State's comments regarding Ward's lack of remorse, finding that

defense counsel's "deliberate strategy of refraining from making objections, because of their

perception that the jury was restless and tired of objections, should not have extended to comments

regarding [Ward's] remorse for the crime of murder."  (App. at 1046, ECF No. 22-9 at 49.)

However, the PCR court found that Ward's

> admissions in his voluntary statement—that he helped to cover up the crimes—were put into issue when he came forward to make the statement.  In addition, any inconsistencies in the statement were properly before the jury.  Therefore, the solicitor's comments specifically regarding [Ward's] demeanor on the tape were not improper, as the jurors could listen to the tape and judge it for themselves.

(Id.)  Notwithstanding defense counsel's failure to object to the lack of remorse comments, the PCR

court found that Ward failed to satisfy the second prong of the Strickland test, as no prejudice was

shown.  Specifically, the court found that Ward failed to show that but for defense counsel's error,

the outcome of the case would have been different.  The PCR court observed that if an objection had

been raised, the State would have been instructed to cease those comments and a curative instruction

would have been given.  Here, the State did not continue to mention Ward's lack of remorse,

significantly lessening the potential prejudice, and the PCR court found that Locklair addressed the

"remorse" issue in his closing argument in part by stating that the issue is not whether Ward is

"likeable" or "cold-hearted."  Therefore, the PCR court determined that any potential prejudice had

been effectively neutralized.   (App. at 1047, ECF No. 22-9 at 50.)

---

[5] To the extent that Ward objects to this finding, the court observes that Ward's testimony primarily reiterated to the court the basis for his PCR application and identified an additional issue for consideration.  (See App. at 997-1010, ECF Nos. 22-8 at 118 through 22-9 at 13.)



The PCR court also found that defense counsel was deficient in failing to object to the State's improper vouching, by stating that the witnesses were "telling the truth" and improperly using the pronoun "I." The PCR court also determined that many of the comments challenged by Ward were not objectionable, "such as pointing to the evidence in the record that corroborated witness testimony." (App. at 1048, ECF No. 22-9 at 51.) However, the PCR court found that Ward failed to satisfy the second prong of the <u>Strickland</u> test, as no prejudice was shown. Specifically, the court found that

> in light of the fact that the solicitor, more than one time, specifically told the jury that they had to judge credibility for themselves, and considering that the judge charged the jury that they were the sole judges of credibility and that the attorneys' arguments were not evidence, [Ward] has failed to prove that he was prejudiced by the solicitor's vouching. This is especially so in light of the overwhelming evidence of his guilt.

(<u>Id.</u>) The PCR found that the overwhelming evidence of Ward's guilt included, but was not limited to:

> [Ward]'s confessions to Denise Cox that he planned to kill the victims—then, later, that he did in fact kill them (Ms. Cox gave this statement to police shortly after the defendant's arrest); statements from various witnesses who heard [Ward] "brag" that he got rid of the boys who took his money; evidence that [Ward] asked Kevin Cooper to purchase bullets for him in advance; evidence that the gun [Ward] had been seen with on numerous occasions was consistent with the gun that shot the victims; the pathologist testimony indicating that one of the victims was shot in the back of the head; evidence that [Ward] was the only person who moved the victims' remains; evidence of the baby-seat still strapped in the backseat of the Suzuki;[6] and evidence

---

[6] The PCR court explained earlier in its Order that Locklair testified that Ward's statement "did not match up with the fact that the Suzuki Sidekick in which the four of them were supposedly riding that day had a baby seat still strapped in the rear seat [when it was recovered from the bottom of Lake Dawoo]. Mr. Locklair stated that it would have been extremely difficult for four grown men to fit into the Suzuki in that condition." (App. at 1042, ECF No. 22-9 at 45) (footnote omitted).



that Brian Elliott was at home on the day of the incident. Internal inconsistencies in [Ward]'s own statement, in addition to its conflicts with the other evidence in the case, also tended to point towards his guilt.

(App. at 1052 n.2, ECF No. 22-9 at 55.)

With regard to Ward's final allegation of ineffective assistance of counsel that defense counsel failed to object to comments on the lack of credibility of Ward's statement and the defense's theory of the case, the PCR court determined that Ward failed to demonstrate either prong of the Strickland test. Specifically, the PCR court observed that counsel may state his version of the evidence, including commenting on the weight or reliability of the evidence. Part of the evidence in this case included Ward's statement, which was introduced over the objection of the defense as discussed above. The PCR court observed that "[t]he jury could properly considered all aspects of the statement, including why it was made at that particular time in the progression of the case, how the defendant sounded on the tape as far as his demeanor, whether the story he was telling was plausible and fit with the other evidence in the case, and whether the statement was internally inconsistent." (App. at 1048-49, ECF No. 22-9 at 51-52.) The PCR court acknowledged that the solicitor "argued at length that the defendant was not credible," that Ward was "lying," that his version of events was "ridiculous," that the only evidence that anyone else was guilty was Ward's own statement "made five months after his arrest and after he had access to discovery." (App. at 1049, ECF No. 22-9 at 52.) Further, the PCR court found that

> [a]lthough the solicitor's argument regarding the defendant's statement was certainly vigorous, and although he did improperly couch a few of his comments by using the pronoun "I," this Court finds that, on the whole, his argument was proper considering the evidence in the record. Therefore, this Court cannot say that counsel was ineffective for failing to object to this line of argument, particularly where the statement was admitted over counsel's strenuous objection, and where counsel was able to specifically respond in the last closing argument. Attorney Locklair pointed out in his closing that [Ward]'s statement fit with the evidence in the car, and that if



Brian Elliott were not involved, he should have been called as a witness at trial but was not.

(Id.)

**Ward's Habeas Claim Regarding Ineffective Assistance for Failure to Object to Solicitor's Comments in Argument.** Upon thorough review of the parties' briefs and the record in this matter, the court finds that Ward cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting his claims of ineffective assistance of counsel or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785. With regard to defense counsel's failure to object to the State's comments regarding Ward's lack of remorse, Ward appears to argue that he was prejudiced because Ward's statement did not indicate that he killed anyone; defense counsel failed to put up a defense; defense counsel advised Ward not to testify; Ward's statement was played for the jury; his counsel abandoned him at a critical stage; defense counsel did not address the lack of remorse argument; and the PCR court's order contains "lies." (See ECF No. 39 at 32.) The court observes initially that many of these arguments do not relate to Ward's argument that defense counsel should have objected to these comments. With regard to all of Ward's claims of ineffective assistance of counsel, upon careful review of the transcript and the PCR court's orders, the court concludes that Ward has not clearly shown that the PCR court's credibility determinations

were without support.[7] See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)). Additionally, for all of the reasons discussed by the PCR court, Ward has failed to establish that there is a reasonable probability that the result of the proceeding would have been different if trial counsel had objected to any these comments. Strickland, 466 U.S. at 694. To the extent that Ward is attempting to allege that prejudice should be presumed under Cronic, the court observes that this argument was not presented to the state courts. Furthermore, there is no support for this assertion in the record. Therefore, Ward has not shown that the PCR court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410.

### 3.     Ground Four[8]

Ward argues that the PCR court and state appellate court erred in failing to find Ward's jury instructions unconstitutional based on the holding in State v. Belcher, 685 S.E.2d 802 (S.C. 2009). The Belcher case was decided by the state Supreme Court after the conclusion of Ward's direct appeal and his first PCR action.

---

[7] As stated above, to the extent that Ward seeks an evidentiary hearing to present additional evidence to support his federal habeas claims—the court observes that its review is generally limited to the evidence that was placed before the PCR court. See Cullen, 131 S. Ct. at 1398, 1400 n.7 ; see also 28 U.S.C. § 2254(d)(2). Ward has not established that any exception to this general rule applies here. See Cullen, 131 S. Ct. at 1400-01; see also 28 U.S.C. § 2254(e)(2); (Order, ECF No. 69).

[8] As stated above, Ward withdrew Grounds Three and Six.



The <u>Belcher</u> case held that "the 'use of a deadly weapon' implied malice instruction has no place in a murder . . . prosecution where evidence is presented that would reduce, mitigate, excuse or justify the killing . . . ." <u>Id.</u> at 809.  However, the South Carolina Supreme Court specifically stated that "[b]ecause our decision represents a clear break from our modern precedent, today's ruling is effective in this case and for all cases which are pending on direct review or not yet final where the issue is preserved" and "will not apply to convictions challenged on post-conviction relief." <u>Id.</u> at 810 (citing <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987) and <u>Harris v. State</u>, 543 S.E.2d 716, 717-18 (Ga. 2001)).

As an initial matter, as determined by the state courts <u>Belcher</u> would not have been applicable to Ward's case because his direct appeal was concluded before <u>Belcher</u> was decided.   The <u>Belcher</u> decision represented a change in state law, and "it is not the province of a federal habeas corpus court to re-examine state-court determinations of state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Contrary to Ward's argument, he has failed to demonstrate that the state court's determination that <u>Belcher</u> would not apply to collateral proceedings violated any constitutional right or the Supreme Court's holding in <u>Teague v. Lane</u>, 489 U.S. 288 (1989).[9]  <u>See</u> <u>Horton v. Warden, Kirkland Corr. Inst.</u>, C/A No. 9:12-2668-CMC-BM, 2013 WL 57703 (D.S.C. Jan. 4, 2013) (noting the holding in <u>Belcher</u> and stating that "[t]he determination of when a change in state law becomes effective is purely a state law issue") (citing <u>Estelle</u>, 502 U.S. at 67-68).  Furthermore, to the extent that Ward attempts to argue that the charge was unconstitutional under <u>Sandstrom v. Montana</u>, 442

---

[9] In <u>Teague</u>, the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." <u>Teague</u>, 489 U.S. at 310.  Under <u>Teague</u>, a new rule will only be applied to a case on collateral review if it falls into one of two exceptions not applicable here.  <u>See</u> <u>id.</u> at 311-13; <u>Whorton v. Bockting</u>, 549 U.S. 406 (2007).



U.S. 510 (1979), such a claim is procedurally defaulted as it was not raised on direct appeal and

could not be raised in a PCR action, and Ward has failed to demonstrate cause and prejudice or that

a fundamental miscarriage of justice will occur if these claims are not considered.[10]  See Drayton v.

Evatt, 430 S.E.2d 517, 520 (S.C. 1993) (stating that issues that could have been raised at trial or in

direct appeal cannot be asserted in PCR application absent a claim of ineffective assistance of

counsel); Coleman, 501 U.S. at 750.  Finally, Ward has failed to demonstrate that the state courts'

decisions were so fundamentally unfair that they resulted in a denial of due process.  See 28 U.S.C.

§ 2254(a) (stating that a writ of habeas corpus is available for a state prisoner "only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States").

### 4.      Grounds Five and Seven

In Grounds Five and Seven, Ward argues that defense counsel was ineffective in failing to

object to allegedly improper statements in the solicitor's closing argument (see App. at 785:19-

786:6, ECF No. 22-7 at 33-34) and in failing to object to the unconstitutional burden shifting jury

instructions given during trial (see App. at 829-30, ECF No. 22-7 at 77-78).  Both of these claims

were presented to the state appellate courts in Ward's *pro se* petition for a writ of habeas corpus in

the original jurisdiction of the South Carolina Supreme Court. (ECF No. 26-35.) The state Supreme

Court denied Ward's petition stating, "[b]ecause petitioner has not shown that 'there has been a

violation which, in the setting, constitutes a denial of fundamental fairness shocking to the universal

sense of justice,' the petition is denied.  Simpson v. State, 329 S.C. 43, 495 S.E.2d 429 (1998)."

(ECF No. 26-36.)  Courts in this district have held that if a state habeas action is rejected pursuant

---

[10] Even if this claim were properly before the court, for the reasons discussed by the
respondent, Ward cannot demonstrate that the charge violated Sandstrom.  (See Respt.'s Mem Supp.
Summ. J. at 60-63, ECF No. 22 at 60-63.)



to Simpson, then " 'the issues have not been considered by the state supreme court and thus the state habeas is an insufficient vehicle for properly presenting issues to the state's highest court to preserve them later for federal review.' " Scott v. South Carolina, C/A No. 8:11-788-RMG, 2011 WL 5101567 (D.S.C. Oct. 26, 2011) (quoting McFarland v. Warden, Lieber Correctional Inst., C/A No. 6:07-588-TLW-WMC, 2008 WL 697152, at *6 (D.S.C. Mar. 11, 2008)). The district courts have further held that these decisions rest on adequate and independent state grounds, rendering petitioner's claims procedurally barred from federal habeas review. Id. Therefore, these claims are procedurally barred from federal habeas review.

Ward's reliance on the Supreme Court's recent decision in Martinez v. Ryan, 132 S. Ct. 1309 (2012), to establish cause for procedurally defaulting on Ground Five is unavailing. The Martinez Court recognized that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of ineffective assistance at trial." Martinez, 132 S. Ct. at 1315. However, this holding was not extended to "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." Id. at 1320. It appears that Ground Five was presented to and ruled on by the PCR court; however, PCR appellate counsel did not present it to the appellate court. (See App. at 1008, 1061-62, ECF No. 22-9 at 11, 64-65.)

With regard to Ground Seven, which was solely presented in Ward's *pro se* state petition for a writ of habeas corpus, Ward cannot establish cause for procedurally defaulting on this claim under Martinez based on his argument that PCR counsel was ineffective in failing to present this claim, as he cannot demonstrate that the claim has "some merit." Martinez, 132 S. Ct. at 1318-19. When a petitioner argues that he is entitled to federal habeas relief based on an improper jury instruction, the court must be mindful that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433,

437 (2004). Further, " '[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " Id. (quoting Boyde v. California, 494 U.S. 370, 378 (1990)). The defendant must demonstrate "that there was a 'reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 191 (2009) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). There must be more than "some 'slight possibility' that the jury misapplied the instruction" and the relevant question is " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " Waddington, 555 U.S. at 191 (quoting Estelle, 502 U.S. at 72). Ward has taken portions of the jury charges discussing malice out of context in arguing that they unconstitutionally shifted the burden of proof. Moreover, reading the charges as a whole, Ward has failed to demonstrate that a reasonable likelihood that the jury applied the instruction in a way that violates the Constitution, see Waddington, 555 U.S. at 191, or that defense counsel erred in failing to object to the selected portions of the malice charge. Furthermore, as discussed above, Ward has failed to demonstrate prejudice in light of the overwhelming evidence of his guilt. Therefore, Ward has failed to demonstrate he is entitled to federal habeas relief.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 23) be granted.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 14, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).